IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-01893-MSK-CBS

JANICE GUYAUX-MITCHELL,

    Plaintiff,

v.

OLD UNITED CASUALTY COMPANY,

    Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Old United") Motion for Summary Judgment **(# 24)**, Ms. Gayaux's response **(# 29)**, and Old United's reply **(# 32)**.

# FACTS

Because the scope of the Court's factual consideration in this matter is somewhat constrained, the Court begins by reciting the pertinent facts as they are set forth in the 2015 complaint in the case of *Guyaux v. Trout*, filed in the Colorado District Court for the County of Denver ("the Denver County action"):

> 7.  This case arises out of a tragic incident occurring on Lake Powell in Utah where a group of friends and acquaintances were vacationing on a [ ] houseboat which was owned, at least in part, by Mr. Trout.
>
> 8.  On June 19, 2012, Ms. Guyaux-Mitchell (one of the vacationers) was . . . floating on an inflatable kayak that was tethered to the houseboat.

> 9. As Ms. Guyaux-Mitchell was floating off the houseboat's backside, a nearby powerboat, which Mr. Trout had previously rented but which was being operated by another vacationer, Andrew Vinnola, began to reverse in Ms. Guyaux's direction.
>
> 10. Mr. Vinnola was unfamiliar with the powerboat's operation and, intending to move the boat forward, pressed a lever that sent the boat racing backwards and into the kayak on which Ms. Guyaux was floating.
>
> 11. The powerboat shredded the kayak, pulled Ms. Guyaux under the water, and severed her left leg below the hip.
>
> 12. Upon information and belief, Mr. Trout permitted Mr. Vinnola to operate the powerboat, despite knowing that Mr. Vinnola was unfamiliar with the powerboat's operation.
>
> 13. Upon information and belief, Mr. Trout permitted Mr. Vinnola to operate the powerboat, despite knowing that Mr. Vinnola had been consuming alcohol and likely would continue to do so while using the powerboat.
>
> . . .
>
> 19. Ms. Guyaux-Mitchell's injuries arose out of her use of the houseboat, insofar as she was using the houseboat when she was struck by the powerboat.

Based on these facts, Ms. Guyaux asserted a single claim, negligent entrustment, against Mr. Trout.

Mr. Trout submitted the claim to Old United, the insurer of the houseboat, and requested that it defend him in Ms. Guyaux's suit. Old United declined to tender a defense, noting that: (i) the named insured on the Old United policy was an entity called VIP #2, Inc., not Mr. Trout, and that Mr. Trout was not listed among the "approved Owners/Operators" authorized by VIP #2 to operate the houseboat under the policy; (ii) that the houseboat "was not under operation and was secured to the beach" at the time of the incident; (iii) that Mr. Trout "personally rented the [powerboat] which was the direct cause of the injuries" to Ms. Guyaux; and (iv) that the policy

2

language excluded injuries caused by property – such as the powerboat -- not covered by the Old United policy, among other reasons.

Without the benefit of a defense tendered by Old United, Mr. Trout elected to resolve Ms. Guyaux's suit through a *Nunn* agreement by which: (i) Ms. Guyaux would establish the extent of her losses via an arbitration with Mr. Trout, and that arbitral award would be entered as a judgment against Mr. Trout in the Denver County action; (ii) Mr. Trout would assign to Ms. Guyaux any claims he, as a putative insured, had against Old United (as well as any claims he might have against the powerboat's owner); and (iii) in exchange, Ms. Guyaux would agree not to execute on her judgment against Mr. Trout. *See generally Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010). Following the arbitration (in which neither Mr. Trout nor Old United participated), the Denver County action was resolved with a judgment entered against Mr. Trout in the amount of approximately $5.68 million.

Ms. Guyaux, as assignee of Mr. Trout rights, then commenced the instant action against Old United, alleging claims for breach of the insurance contract and common-law bad faith breach. Old United now moves **(# 24)** for summary judgment on Ms. Guyaux's claims, arguing that its policy did not cover the conduct that led to her injuries.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Duty to defend

Under Colorado law, an insurer has a duty to tender a defense to an insured if the underlying complaint "alleges any facts or claims that might fall within the ambit of the policy." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003). The determination is based on the four corners of the underlying complaint, compared against the terms of the insurance policy in question. *DISH Network Corp. v. Arch Specialty Ins. Co*, 659 F.3d 1010, 1015 (10th Cir. 2011). Because complaints in litigation may lack extensive amounts of detail, the standard favors the insured: "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Cyprus Amax*, 74 P.3d at 301; *see also Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613-14 (Colo. 1999) ("Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim"). However, if an insurer shows that the claims asserted in the complaint are clearly excluded from coverage, the insurer has no obligation to defend. *Lopez v. American Family Mut. Ins. Co.*, 148 P.3d 438, 439 (Colo.App. 2006). And of course, if there is no duty to defend, the insurer also has no duty to indemnify the insured for any losses or judgments taken against them.

When construing policy terms, the Court applies ordinary principles of contract interpretation: the court construes terms according to their plain meaning and attempts to read the document as a whole and give effect to all of its provisions. However, because insurance contracts are unique, ambiguous provisions should be construed in favor of affording coverage.

5

*Greystone Const. Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272 (10th Cir. 2011).

### C. Merits

Old United's policy provides for coverage for "bodily injury or property damage caused by an accident arising out of the ownership, maintenance, or use of the covered property." Old United cited several grounds for its refusal to tender a defense to Mr. Trout: (i) that he was not a named insured under the policy nor was he listed as an authorized user of the houseboat, (ii) that the kayak Ms. Guyaux was using was not "insured property" as defined in the policy, and (iii) that the bodily injury that Ms. Guyaux suffered was caused by the use of property – namely, the powerboat – that was not covered by the policy. Ms. Guyaux has tendered colorable – if not necessarily persuasive – arguments as to the first two matters.[1] But the Court finds that the third issue is dispositive and requires the entry of summary judgment against Ms. Guyaux.

Exclusion (k) of the policy provides that Old United will <u>not</u> pay for bodily injury or property damage "caused by the use of any property that is not covered by this policy." There is no dispute that the direct cause of Ms. Guyaux's injuries was Mr. Vinnola driving the powerboat

---

[1] Although Mr. Trout was neither the named insured nor listed among the approved users of the houseboat tendered to Old United, the policy language extends coverage to "any person operating [the houseboat] with [VIP #2's] prior permission." The policy does not specifically require authorized users to be disclosed in advance to Old United, although there is some evidence that VIP #2 did provide Old United with a list of authorized users. Thus, the fact that Mr. Trout was not previously disclosed to Old United does not mean that his operation of the houseboat was not permitted by VIP #2, and thus, there may be at least a colorable claim to be made that Mr. Trout was an insured under the Old United policy.
    The policy defines "insured property" as the houseboat itself and its "unattached equipment and accessories," but excludes "personal watercraft." Assuming, without necessarily finding, that the inflatable kayak Ms. Guyaux was using was a "personal watercraft," it would seem to not be "insured property." However, the definition of "insured property" <u>does</u> include a "dinghy or tender," defined as a "small boat . . .used to travel to and from" the houseboat. Arguably, a kayak could be used by a houseboat owner as a dinghy or tender, and the allegations in the Denver County action do not clearly exclude the possibility that the kayak could be used in that manner.

into her kayak. And there is no dispute – and certainly no facts to suggest – that the powerboat that Mr. Trout "rented" from another entity is "property . . . covered by" the Old Union policy. Thus, it appears to be clear that the policy does not provide coverage for Ms. Guyaux's injuries.

Ms. Guyaux offers two arguments as to why the quoted policy language restricting coverage for injuries "caused by" uninsured property would not apply here. Neither is persuasive.

First, she argues that paragraph 19 of the Denver County complaint asserts that "Ms. Guyaux-Mitchell's injuries arose out of her use of the houseboat," and suggests that Old United is not free to "ignore" this allegation. This argument fails for several reasons.

An assertion that one's injuries "arose out of" a particular action is not synonymous with an allegation that the injuries were "caused by" that action. In the negligence context, Colorado law recognizes that the element of causation must be established by two separate showings. The act in question must be a "cause in fact" (or "but for cause") of the injury, and it must also be the "proximate cause" (or "legal cause") of that injury. *See Boulders at Escalante LLC v. Otten Johnson Robinson Neff and Ragonetti, P.C.*, 412 P.3d 751, 759-62 (Colo.App. 2015). The phrase "arises out of" most commonly describes the concept of cause in fact. An injury may have many causes in fact. Indeed, one could construct a whole series of hypothetical events (Ms. Guyaux's decision to accept an invitation to go to the houseboat, her having a job or social schedule that accommodated the dates of the proposed houseboat trip) that, but for which, Ms. Guyaux would not have been in the path of the powerboat on that fateful day. But injuries tend to have comparatively few proximate causes, those being the events that led most foreseeably and directly to the injury.

The Court is confident that any ordinary person reading the term "caused by" in Old

7

United's policy would understand that term to be describing the concept of proximate causation, not causation in fact. If one were to ask a friend who had recently suffered a car accident about the "cause" of the accident, one would expect a response about the events that occurred moments before impact, not about the friend's decision that morning to drive instead of taking the bus. Similarly, if one were to ask Ms. Guyaux what caused her injuries, we could expect her to answer "a powerboat ran over me," not "I decided to accept an invitation to use a houseboat. . . ." Thus, the Court finds that Old United's policy language excludes coverage for injuries that were <u>proximately</u> caused by the use of non-insured property. The allegations in the Denver County complaint make clear that the proximate cause of Ms. Guyaux's injuries was Mr. Vinnola's careless operation of the powerboat, and the complaint gives no reason to believe that the powerboat was insured or covered property under the terms of the policy.

Moreover, the assertion that Ms. Guyaux's injuries "arose out of her use of the houseboat" is a conclusion, not a fact. An insurer is not required to tender a defense based on conclusory assertions in a complaint, particularly conclusory assertions that contradict the clear import of other well-pled facts in that complaint. *See Horace Mann Ins. Co. v. Peters* 948 P.2d 80, 86 (Colo.App. 1997) ("conclusory allegations of negligence" did not require insurer to tender a defense where the factual averments made clear that the injury was caused by intentional conduct that was excluded under the policy).

Second, Ms. Guyaux argues that construing the "caused by" language as urged by Old United would "render[ ] the liability coverage . . . entirely illusory." She notes that the policy provides coverage for injuries "caused by an accident arising out of the ownership, maintenance, or use of the 'covered property'" (that is, the houseboat and its accessories). She argues that Old United's interpretation of Exclusion (k) "takes [that coverage] away whenever other property

8

that is not covered by the Policy is involved." Once again, the policy's use of the term "caused by" makes clear that no inconsistency exists. If, for example, Ms. Guyaux was struck not by the powerboat, but by the houseboat itself, her injuries would have been "caused by covered property" – the houseboat – and those injuries would be covered. Alternatively, if the powerboat in question was not a recreational rental by Mr. Trout, but rather the houseboat's own dinghy or tender – thus making the powerboat itself "covered property" – Ms. Guyaux's injuries would be covered. Or, for that matter, the hypothetical that Ms. Guyaux gives: "if the houseboat were improperly driven into a dock causing bodily injury or property damage," coverage would exist for those injured because the mechanism causing the injury – the houseboat – is "covered property."[2] In all three situations, the proximate cause of the injury would be the "ownership, maintenance, or use of covered property," and would thus be within the policy's grant of coverage. But where the mechanism of injury is not a piece of property covered by Old United's policy, be it the powerboat or a falling airplane, the policy does not afford coverage simply because Ms. Guyaux presence was related to the houseboat or other piece of covered property when the accident occurred. Simply put, the covered/not-covered distinction flows from the mechanism that causes the injury. Here, that mechanism was a powerboat that was not insured by Old United, and thus, Exclusion (k) precludes any coverage for the injuries that the powerboat caused.

---

[2] Ms. Guyaux posits that Old United could deny coverage in this situation because "the dock would constitute property not covered by the policy." Her premise is correct – a dock would not be covered property – but her conclusion is incorrect because in her example, the houseboat, not the dock, is the mechanism of injury. If, on the other hand, an improperly secured dock drifted into the path of the houseboat, resulting in a collision and injury, both the houseboat owner and dock owner might identify the other as the "cause" of the collision and injury. In such circumstances, Old United might be obligated to tender a defense to the houseboat operator because the dock owner would be claiming property damage resulting from the use of covered property.

Accordingly, the Court finds that Old United has demonstrated that the sequence of events described in the Denver County complaint could not give rise to any coverage under the terms of the policy. Old United thus owed Mr. Trout no defense or indemnification. Ms. Guyaux, as Mr. Trout's assignee, thus has no colorable claims for breach of contract or bad faith breach against Old United, and Old United is entitled to summary judgment in its favor.

## **CONCLUSION**

For the foregoing reasons, Old United's Motion for Summary Judgment **(# 24)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Old United on the claims herein and thereafter close this case.

Dated this 5th day of February, 2019.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge